NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAMES MICHAEL HUMPHREY, et al., *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

STATE OF ARIZONA, *Defendant/Appellant/Cross-Appellee*.

No. 1 CA-CV 16-0570
FILED 12-5-2019

Appeal from the Superior Court in Maricopa County
No. CV2011-091958
The Honorable David K. Udall, Judge
The Honorable Emmet Ronan, Judge, *Retired*

## REVERSED IN PART; AFFIRMED IN PART; REMANDED

COUNSEL

Arizona Attorney General's Office, Phoenix
By Fred Zeder, Daniel P. Schaack
*Co-counsel for Defendant/Appellant/Cross-Appellee*

Renaud, Cook, Drury, Mesaros PA, Phoenix
By William W. Drury, John A. Klecan
*Co-counsel for Defendant/Appellant/Cross-Appellee*

Struck, Love, Bojanowski & Acedo PLC, Chandler
By Nicholas D. Acedo
*Co-counsel for Defendant/Appellant/Cross-Appellee*

The Leader Law Firm PC, Tucson
By John P. Leader
*Co-Counsel for Plaintiffs/Appellees/Cross-Appellants Humphrey*

Zachar Law Firm PC, Phoenix
By Christopher J. Zachar
*Co-counsel for Plaintiffs/Appellees/Cross-Appellants Quinn*

Aiken & Scoptur PC, Milwaukee, WI
By Timothy J. Aiken
*Co-counsel for Plaintiffs/Appellees/Cross-Appellants Quinn and Humphrey*

League of Arizona Cities and Towns, Phoenix
By Christina Estes-Werther
Attorney for *Amicus Curiae* Apache County, et al.

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Maria Elena Cruz joined.

---

**B R O W N**, Judge:

¶1        The State of Arizona challenges several superior court rulings relating to a judgment entered in favor of Plaintiffs in this wrongful death case.[1]  The dispositive issue here is whether the court erred in denying the

---

[1]        James Michael Humphrey pursued this action as the statutory plaintiff and surviving spouse of Pamela Humphrey, individually and on behalf of Pamela's other statutory beneficiary (Sean Humphrey).  *See* A.R.S. § 12-612(A) ("An action for wrongful death shall be brought by and in the name of the surviving husband or . . . child . . . of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.").  Lynn Quinn pursued this action as the statutory plaintiff and surviving spouse of Ann Quinn, individually and on behalf of Ann's statutory beneficiaries (Christopher Quinn (aka Lynn Quinn II), Brent Quinn, and Chase Quinn).  *Id.*  When Lynn Quinn passed away, the court granted Chase Quinn's motion to substitute for Lynn as the statutory plaintiff.  Unless otherwise

State's motion for summary judgment and motion for judgment as a matter of law ("JMOL"), both of which sought dismissal of Plaintiffs' negligence claims on statute of limitations grounds. As a matter of law, we conclude that Plaintiffs failed to file a valid notice of claim. We therefore reverse the court's orders denying summary judgment and JMOL, and remand for entry of judgment in favor of the State. In their cross-appeal, Plaintiffs argue the court erred in dismissing Plaintiffs' claim that the State violated Arizona's Public Records Act. *See* A.R.S. § 39-121. We affirm the court's dismissal of that claim.

## BACKGROUND

¶2            On May 14, 2008, Pamela Humphrey and Ann Quinn (Pamela's sister-in-law) were traveling on Interstate I-10 ("I-10") near mile marker 171.4 when Pamela lost control of her vehicle, crossed through the open median, and collided with a semi-trailer truck traveling in the opposite direction. Neither Pamela nor Ann survived the crash.

¶3            On or about August 13, 2008, Quinn (who moved to Oklahoma after the accident) read a newspaper article from *The Oklahoman*, titled "Barriers Put Brake on Road Deaths," that discussed the Oklahoma Department of Transportation's decision to install cable median barriers in "medians prone to crossover collisions." The article concluded that "the installation of cable barriers has been one of the most effective, if not the most effective, safety improvements the department has made," and illustrated this concept by noting that since installation, the barriers had been hit more than 500 times by passenger cars without fatalities. Quinn mailed the article to Humphrey with the following note: "Read the article on Barriers[,] [i]f only! Please save and use this[.]"

¶4            Around the same time, Humphrey began to investigate cross-median accidents and fatalities because he "wanted to prevent others from having a family member die" in such a collision. Humphrey contacted friends who did landscape architecture work for the Arizona Department of Transportation ("ADOT") and "asked them if there was anyone that [he could] talk to at ADOT about median cables and what we can do." Humphrey then contacted Sean Hammond, a friend who worked in the

---

noted, individually we refer to James Michael Humphrey as "Humphrey," Lynn Quinn as "Quinn," and Sean Humphrey, Christopher Quinn and Brent Quinn as "the Beneficiaries." We refer to Humphrey, Chase, and all statutory beneficiaries collectively as "Plaintiffs."

Governor's Office of Highway Safety and asked if Hammond could "recommend or find . . . someone that [he could] talk to and begin a dialogue about what we can do about the median cable." Specifically, Humphrey wanted to (1) know the number of fatalities on I-10 as a result of crossover accidents, and (2) meet with ADOT officials "to see if he could help them with getting cable barriers and . . . additional safety measures" along I-10. Hammond believed he could obtain this information for Humphrey because he had made similar requests in his professional capacity to ADOT's Director of Traffic Studies, Nancy Crandall. Acting on behalf of Humphrey (i.e., not in his professional capacity), Hammond asked Crandall about the number of cross-median collisions between Tucson and Phoenix. Crandall informed Hammond that cross-over incidents were "occasional," but she did not provide him with any specific data sets.

¶5        In late October or early November 2008, attorney John O'Hare, a "personal friend of Pam," informed Humphrey of the need to file a notice of claim to preserve his right to pursue legal action against the State. Humphrey authorized O'Hare to draft and file a notice of claim. O'Hare submitted a notice to the Arizona Attorney General's Office and ADOT on November 7, 2008 ("2008 notice"), which stated in relevant part as follows:[2]

> We are sending this letter providing formal notice of a personal injury claim against the State of Arizona pursuant to A.R.S. Section 12-821.01.
>
> On May 14, 2008, in the morning, Ms. Pamela Waters Humphrey was operating her vehicle on Interstate 10 about milepost 172 in the State of Arizona, Pinal County. Her sister-in-law, Ms. Ann Quinn was a passenger in the same vehicle. For reasons unknown at this time, Ms. Humphrey, while operating the vehicle at a safe speed, lost steering control. Ms. Humphrey's vehicle went through the median and was struck by an oncoming truck in the opposite traffic lane. The police report provides greater detail. As a result of these events, both Ms. Humphrey and Ms. Quinn immediately died from injuries.
>
> It is believed that the Humphrey vehicle rolled through the median and into oncoming traffic *due to the State of Arizona's negligent maintenance of the highway, median*; and *failure to*

---

[2]        Although the 2008 notice is dated November 7, 2009, it is undisputed the submittal date was November 7, 2008.

*provide a guard barrier* to prevent vehicles from going into oncoming traffic.

Both Ms. Humphrey and Ms. Quinn were married and left additional family members. The Humphrey and Quinn estates and families have suffered devastating pecuniary and non-pecuniary losses because of the deaths of Ms. Humphrey and Ms. Quinn.

This seeks the recovery of damages for wrongful death of both women including all proper damages associated with their deaths, that are due their estates and surviving family members. While their damages are difficult to quantify at this time, we believe that *a fair value for these damages is in the range* of Five to Ten Million Dollars for each of their deaths.

(Emphasis added.)

**¶6** Shortly thereafter, Humphrey sent a letter to Congresswoman Gabrielle Giffords on December 5, 2008, requesting her "assistance" in "mount[ing] a new public campaign to make Arizona's highways safer." After summarizing the details of the crash, his letter stated:

I found out after the crash that this section of I-10 does not have a median cable barrier, which is designed to prevent vehicles from crossing through the median and onto oncoming traffic.

. . .

Interstate 10 should have median cable barriers installed along the entire stretch between Tucson and Phoenix. These barriers are crucial given the heavy (and increasing) traffic volumes, high posted speeds and unsafe roadway conditions (uneven roadways, narrow lanes, road debris, wildlife crossings and dust from the plowing of nearby fields).

. . .

I have heard it estimated that the cost of a highway fatality is between $5 and $10 million dollars. If we can prevent up to 95% of these types of accidents from occurring, it seems likely that the cost savings will cover the cost of installing and

maintaining a median cable barrier system. Besides the dollars involved, think of the tragic human cost to families who lose loved ones. *Both my wife and sister would most likely be alive today if a median cable barrier had been in place.*

(Emphasis added.)

¶7         On January 26, 2009, Humphrey sent ADOT a letter "rescinding [his] personal injury claim against the State of Arizona" and advising that O'Hare was no longer representing him. On the same day, Humphrey also submitted a "public information request" to ADOT, which asked the following:

1. How many cross-median fatalities have occurred on I-10 between Tucson and Phoenix?

2. How many cross-median accidents have occurred on I-10 between Tucson and Phoenix?

3. How many miles of I-10 between Tucson and Phoenix remain uncabled?

4. How much would it cost [to cable] those remaining sections of I-10 between Tucson and Phoenix?

¶8         In response to questions one and two, ADOT's custodian of records (Susan Olson) stated, "Our accident statistical information does not narrow the cause of the accident into the data input. Therefore, I do not have a record that reports the number of cross-median fatalities." As for questions three and four, Olson listed the mile markers on I-10 between which cable barriers had not been installed, and she provided cost information for the recent installation of cable barriers in "the Tucson area." Olson sent Humphrey another letter on February 25, 2009, referencing a "supplemental telephonic request" and provided the "[t]raffic records statistical reports for [I-10, Tucson–Phoenix (MP 231.50–163.5)] from 1/1/06 to 12/31/08 (latest available): Motor Vehicle Crashes (Eastbound and Westbound) by: 1) First Harmful Group; 2) Collision Manner; [and] 3) Accident History Data."

¶9         In August or September 2010, a private investigator working for attorney John Leader noticed a cross at the crash site with Pamela's name and contacted Humphrey, asking if he would be interested in helping in another case involving a cross-median accident. The investigator informed Humphrey that Leader had information about cross-median

accidents and fatalities on I-10, which led to Humphrey retaining Leader as his attorney in this case. On October 29, 2010, Leader filed a "supplemental" notice of claim on behalf of all Plaintiffs, explaining that while the original notice of claim "was adequate in all respects, this supplemental notice is submitted in an abundance of caution." When ADOT did not respond to the notice, Plaintiffs filed their complaint on February 3, 2011, alleging negligence, gross negligence, and a violation of the Arizona Public Records Act, A.R.S. § 39-121.[3]

¶10 The State sought summary judgment on the negligence claim, arguing it was time-barred under A.R.S. §§ 12-821 and -821.01. In response, Humphrey argued that accrual of the negligence claim was "necessarily" a question of fact for the jury and that he was "entitled to judgment as a matter of law on the issue of tolling due to the [State's] deliberate concealment of material facts." Humphrey also filed a cross-motion for summary judgment on the tolling issue. Quinn's separate response to the State's motion argued the issue of accrual was a jury question, the time of accrual for the statute of limitations was tolled "to the extent that State officials or employees gave false information to [Humphrey]," and regardless, Quinn had "no knowledge" until October 2010 of a potential claim against the State.

¶11 In its summary judgment motion, the State also requested dismissal of the alleged public records violation, asserting Humphrey made "a general request for information that does not reasonably describe an identifiable record" maintained by the State. Humphrey countered that ADOT's answers "violated the spirit and purpose of the public records law" because it "suggeste[d] the information Plaintiff requested [did] not exist," when the State did in fact possess Department of Public Safety accident reports from which the answers to Humphrey's questions could be gleaned.

¶12 In July 2012, the superior court denied the State's motion and Humphrey's cross-motion relating to compliance with A.R.S. §§ 12-821 and -821.01. The court first noted that "when a cause of action accrues and when the statute of limitations begins to run is an issue of fact for the jury" and then found that genuine issues of material fact existed as to the following: (1) whether Humphrey's "knowledge, understanding and acceptance, in the aggregate, provided sufficient information that he should have known he had a cause of action against the State based on the absence of a median barrier"; (2) whether he made a public records request and whether ADOT

---

[3] Because the gross negligence claim was not submitted to the jury, we do not address it further.

had records containing the information he sought; (3) whether ADOT had "deliberately concealed material information" that Humphrey requested or "[misled] Mr. Hammond and [Humphrey] into believing there was no problem with crossover collisions on the I-10 between Phoenix and Tucson." Although not entirely clear, the record does not show that the court specifically addressed the State's requested dismissal of Plaintiffs' claim that a public records violation occurred.

¶13        After re-assignment of the case from Judge Ronan to Judge Udall, the State filed a motion for partial summary judgment in October 2013 that requested dismissal of Plaintiffs' public records claim because "at the time of [the] request, ADOT did not have any record or report providing an answer to [the] questions and [had] no practical way of identifying police reports of cross-median crashes." The State acknowledged that it requested similar relief in its initial motion for summary judgment but contended raising the issue again was not improper because the issue had "become lost in the shuffle" of the myriad of separate filings related to the motions and had not been ruled on. Humphrey responded that the previous ruling "implicitly . . . denied or intended to deny" the motion on that issue and it could not be reconsidered. After hearing oral argument, the court granted the State's motion, finding that the State "appropriately answer[ed] Plaintiffs' inquiries to the best of their ability" and could not be "required to produce what it does not have."

¶14        A jury trial was held in 2015. After Plaintiffs rested their case, the State moved for JMOL, asserting that Plaintiffs failed to comply with the requirements of §§ 12-821 and -821.01. Judge Udall denied the motion, stating he would not overrule Judge Ronan's summary judgment ruling. The jury found in favor of Plaintiffs and awarded damages in the amount of $47,010,000, of which $39,958,500 was attributable to the State. Following the denial of several post-judgment motions—including a renewed motion for JMOL—the State timely appealed and Plaintiffs timely cross-appealed.[4]

---

[4]        The parties reached a high/low settlement after the appeal was filed, under which the amount of damages Plaintiffs will receive depends on the outcome of this appeal.

**DISCUSSION**

## I.      Statutory Prerequisites for Suing the State

¶15      The State argues that Plaintiffs' claims are barred as a matter of law because Plaintiffs failed to comply with the requirements of §§ 12-821 and -821.01.  The State addresses both the denial of its motion for summary judgment and its motion for JMOL, but its primary focus seems to be the summary judgment ruling.  Generally, the denial of a motion for summary judgment is not appealable, but we need not address whether an exception to this rule applies because the State properly preserved the argument in its JMOL motion. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, 539, ¶ 19 (App. 2004) ("[I]n cases that have gone to trial, a party who wants to preserve a summary-judgment issue for appeal, with a possible exception for a purely legal issue, must do so by reasserting it in a Rule 50 motion for judgment as a matter of law or other post-trial motion.").  Regardless, our analysis of the court's rulings on each of these motions is the same because no material differences exist between the evidence presented at the summary judgment stage and at trial as to whether Plaintiffs filed a proper notice of claim.

¶16      We review de novo whether the superior court properly denied the State's motion for summary judgment and motions for JMOL. *Glazer v. State*, 237 Ariz. 160, 167, ¶ 29 (2015) ("The standards for granting or denying a motion for JMOL and a motion for summary judgment are the same.").  We also review questions of statutory interpretation de novo. *Id.* at 163, ¶ 12. JMOL is proper when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Ariz. R. Civ. P. 50(a)(1); s*ee Robertson v. Wal-Mart Stores, Inc.*, 202 Ariz. 286, 290, ¶ 14 (App. 2002) ("The 'motion should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense.'") (quoting *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990)).

¶17      Arizona law requires a plaintiff to file a notice of claim "within one hundred eighty days after the cause of action accrues" before filing a lawsuit against a public entity.  A.R.S. § 12-821.01(A).  The lawsuit, in turn, must be filed "within one year after the cause of action accrues and not afterward."  A.R.S. § 12-821.

**¶18**     The notice of claim must include (1) "facts sufficient to permit the public entity. . . to understand the basis on which liability is claimed"; (2) "a specific amount for which the claim can be settled"; and (3) facts supporting the requested settlement demand. A.R.S. § 12-821.01(A). If litigants do not strictly comply with § 12-821.01(A), their compliance with the one-year statute of limitations in § 12-821 is irrelevant because "no action may be maintained" in the absence of a statutorily compliant notice. *Id.*; *see also Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 527, ¶ 10 (2006) ("Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements.").

**¶19**     Two notices of claim were filed in this case—the first by O'Hare on November 7, 2008, and the second by Leader on October 29, 2010. The 2008 notice satisfies almost all statutory requirements: it was filed within 180 days from the date of the accident, and it asserted that Plaintiffs' wives/mothers died because I-10 (maintained by the State) did not have a median barrier and was unsafe. This assertion unequivocally allowed ADOT to understand the alleged basis for its liability, and thus met the statute's "facts sufficient" requirement. A.R.S. § 12-821.01(A). However, the 2008 notice was legally insufficient because it did not contain a "specific amount for which the claim can be settled." *Id.*; *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296–97, ¶ 10 (2007) (holding that a notice of claim was invalid because its "qualifying language [made] it impossible to ascertain the precise amount" for which the public school could have settled the claim). Thus, the 2008 notice cannot serve as a valid notice of claim for the Plaintiffs' lawsuit.

**¶20**     The 2010 notice, in contrast, complied with § 12-821.01. It asserted the same basis for liability as the 2008 notice, set forth a specific amount for which the claims could be settled, and explained why the facts supported the requested relief. But the 2010 notice was filed more than two years after the date of the accident, which means it could not qualify as a timely notice of claim unless Plaintiffs' cause of action accrued on or after May 2, 2010. A.R.S. § 12-821.01(A) ("Any claim that is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon."). We address first whether either Humphrey or Quinn submitted a timely notice of claim, and then turn to the statutory beneficiaries.

### A.     Accrual of Humphrey's Claim

**¶21**     Section 12-821.01(B) provides that accrual begins when "the damaged party realizes he or she has been damaged and knows or

reasonably should know the cause, source, act, event, instrumentality, or condition that caused or contributed to the damage." We have interpreted § 12-821.01(B) "as a codification of the discovery rule for determining when causes of action against public entities . . . accrue." *Thompson v. Pima County*, 226 Ariz. 42, 46, ¶ 12 (App. 2010). Under that rule, a cause of action accrues when the plaintiff knows he or she has been injured and has a "reason to connect [the injury] to a particular [cause, source, act, event, instrumentality, or condition] in such a way that a reasonable person *would be on notice to investigate* whether the injury might result from fault." *Walk v. Ring*, 202 Ariz. 310, 316, ¶ 22 (2002) (emphasis added); *Doe v. Roe*, 191 Ariz. 313, 322, ¶ 29 (1998) ("A cause of action [accrues when] the plaintiff *knows or with reasonable diligence should know* the facts underlying the cause.") (emphasis added).

¶22 The State argues Humphrey's claim accrued as a matter of law by November 7, 2008, at the latest; but Humphrey counters that accrual is a factual question that is "usually and necessarily" for the jury to determine and cannot be decided as a matter of law. *Walk*, 202 Ariz. at 316, ¶ 23. We acknowledge that when an action accrues must generally be resolved by the trier of fact. *See id.* at ¶¶ 23–24 (concluding that whether plaintiff was on notice to investigate could not be decided as a matter of law when she had been assured by her doctor that he had done nothing wrong and subsequent doctors did not inform her they believed the original doctor was negligent); *see also Doe*, 191 Ariz. at 324, ¶ 35 (explaining accrual did not begin when the victim first began to recall repressed memories that she did not believe were real because plaintiffs are not required to file complaints when they "subjectively believe[] [the facts] to be false or unbelievable").

¶23 The general rule, however, does not apply when there is no genuine dispute as to facts showing plaintiff knew or should have known the basis for the claim. *See Thompson*, 226 Ariz. at 46–47, ¶¶ 13–14 (finding no genuine factual dispute that plaintiffs had "reasonable notice to investigate" whether the county was negligent for failing to maintain a roadway because evidence showed the driver learned after the accident he had driven over potholes, the officer on scene told the driver the potholes likely caused or contributed to her accident, and the driver's family members testified they suspected the potholes were a cause of the accident); *Little v. State*, 225 Ariz. 466, 470, ¶ 13 (App. 2010) (affirming summary judgment ruling that notice of claim was untimely and explaining the plaintiff's investigation into doctor's negligence started "when a 'reasonable person would have been on notice' to investigate whether

negligent conduct may have caused [the] injury") (citing *Walk*, 202 Ariz. at 310, ¶ 24).

**¶24** Humphrey testified in his deposition that "[a]fter reading the research and seeing the difference between a cabled roadway and an uncabled roadway," he came to the conclusion that the roadway at mile marker 171.4 was unsafe. He then acknowledged that he reached that conclusion "*within months* after [his wife's] death." (Emphasis added.) Although Humphrey asserts the need for a median barrier could only be known after an expert witness could review the prior crash history, the 2008 notice alleged that Humphrey's wife died "due to the State of Arizona's negligent maintenance of the highway[] median; and *failure to provide a guard barrier* to prevent vehicles from going into oncoming traffic." (Emphasis added.) Despite Humphrey's frequent attempts to distance himself from the relevance of the 2008 notice, his counsel told the jury that Humphrey complied with the notice of claim statute via the 2008 notice, and Humphrey testified that he read and approved the 2008 notice. These facts establish he knew in 2008 that he had been injured, and he knew the source of his injury was the lack of a median barrier on a State-maintained highway. *See Little*, 225 Ariz. at 470, ¶ 12 (finding plaintiff's knowledge and authorization of the filing of a letter showed that at the time, her knowledge, understanding, and acceptance provided enough facts to constitute a cause of action). This evidence also confirms that no later than November 7, 2008, Humphrey had reasonable notice to investigate whether the State was negligent in failing to place a barrier in the median.[5]

**¶25** Humphrey testified at trial that he had "no facts" to support the allegations contained in the 2008 notice, and that O'Hare merely filed the notice—he did not help Humphrey gather additional facts to support a complaint. On appeal, he relies on that testimony in support of his argument that the cause of action did not accrue until he had "facts sufficient" to support both a notice of claim and the subsequent complaint. Humphrey contends that a plaintiff "must have reason to know a potential defendant did something wrong" and that "the need for a median barrier

---

[5] Our analysis is further supported by Humphrey's letter to Congresswoman Giffords, stating he believed Arizona's roads were unsafe and his wife and sister would likely be alive had there been a cable median barrier. Humphrey sent this letter a month after the 2008 notice was filed, but it confirms he possessed sufficient facts to file a valid notice of claim before May 2, 2010.

could not be evaluated or known (even via traffic engineer) without prior crossover crash information."

¶26 Humphrey's arguments are similar to those raised by the plaintiffs in *Thompson v. Pima County*, who asserted their notice of claim was timely because accrual did not begin until their investigation into the State's negligence was complete and they received their expert's opinion on causation. 226 Ariz. at 44–45, ¶¶ 6–9. Rejecting their argument, we held:

> Under the plain language of the statute, "accrual" and "facts sufficient" are distinct concepts. Accrual relates to when the plaintiff first becomes aware that he or she has a cause of action against the defendant, and "facts sufficient" describes the quantum of facts that the plaintiff must include in the notice of claim. And, the statutory language does not condition the accrual of a claim upon the plaintiff's ability to articulate the "facts sufficient" for giving notice of the claim pursuant to § 12-821.01(A). Indeed, the 180-day delay between the time of accrual and the time at which the notice of claim containing "facts sufficient" must be filed is clear evidence the legislature did not intend [the two terms] to have the same meaning.

*Id.* at 45, ¶ 9.

¶27 Humphrey attempts to distinguish *Thompson* from his claim by asserting the existence of the potholes was easily discoverable, and the *Thompson* plaintiffs were informed by the officers that the potholes may have contributed to the accident. Although the facts of each accident and the plaintiffs' discovery of their respective injuries are distinguishable, the legal conclusion is not. The purpose of a notice of claim is to "allow the public entity to investigate and assess liability, . . . permit the possibility of settlement prior to litigation, and . . . assist . . . in financial planning and budgeting." *Deer Valley*, 214 Ariz. at 295, ¶ 6 (quotation omitted). It is not intended "to test the legal sufficiency of the claim or the damages alleged." *Havasupai Tribe v. Ariz. Bd. of Regents*, 220 Ariz. 214, 227, ¶ 45 (App. 2008); *see Little*, 225 Ariz. at 470, ¶ 13 (rejecting plaintiff's argument that her claim did not accrue until she received an expert medical opinion of malpractice). Consistent with these authorities, delaying accrual until Humphrey had facts sufficient to satisfy filing a complaint would be contrary to the plain language of the notice of claim statute. *See* A.R.S. § 12-821.01.

**¶28**       Humphrey also argues the 2008 notice, which was filed in November, is irrelevant because his claim was tolled from August 2008 when ADOT allegedly began concealing evidence from him. Humphrey focuses on the discussions between Hammond and Crandall, asserting that Crandall had access to the requested information and not providing it to Hammond was an act of fraudulent concealment. Even assuming that Crandall was "legally required" to provide more specific information to Hammond, our holding here would not change. Tolling does not continue indefinitely; it ends when a plaintiff becomes aware or should be aware of the pertinent facts giving rise to the claim. *See Little*, 225 Ariz. at 471, ¶ 17 n.8. As a matter of law, any period of tolling ended on November 7, 2008, when Humphrey filed a notice of claim that plainly established that he knew his injury arose from the State's alleged negligence, or alternatively, he had reasonable notice to investigate whether the State was negligent. *See Walk*, 202 Ariz. at 319, ¶ 35 n.6. Because Humphrey failed to file a timely notice of claim despite having the facts necessary to do so, his negligence claim against the State is barred.[6]

### B.    Accrual of the Quinn Claim

**¶29**       Quinn argues he did not learn of facts regarding a "potential claim against the State" until mid-October of 2010, and the uncontroverted evidence established that the need for median barriers could not be known without an expert opinion. Quinn's argument fails to properly acknowledge the principles we have outlined above—that accrual of an action starts when the party either knew or should have known to investigate whether its injury was attributable to a defendant. *See* A.R.S. § 12-821.01(B); *Walk*, 202 Ariz. at 316, ¶ 23. This rule is premised on the notion that it is "unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists," *Doe*, 191 Ariz. at 322, ¶ 29 (quotation omitted); it does not permit plaintiffs to sleep

---

[6]       Humphrey urges us to consider public policies that are generally applicable to limitation statutes, including recognition that the orderly administration of justice resulting from a limitations requirement may be outweighed "where the interests of justice require the vindication of a plaintiff's rights." *See Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996) (quotation omitted). But Humphrey cites no authority suggesting those policies would permit us to deviate from the requirements the legislature has established for filing claims and lawsuits against governmental entities. *Cf. Deer Valley*, 214 Ariz. at 299, ¶ 21 (noting the legislature intended statutory amendments "to establish specific requirements that must be met for a claimant to file a valid claim with a government entity").

on their rights and ignore their affirmative duty to "timely inquire whether any basis exists for legal action, " *Walk*, 202 Ariz. at 317, ¶ 25.

**¶30** Quinn testified in his deposition that he sent Humphrey the newspaper article, *supra* ¶ 3, because it made him think "the fatalities could have been stopped" if a median barrier had been in place, and that although he was generally aware Humphrey was trying to obtain information from the State about the crash, he chose not to investigate further. On this record, Quinn's knowledge, understanding, and acceptance of his injury and its connection to the State were sufficient to trigger his duty to investigate whether the State was at fault; his failure to do so entitled the State to judgment as a matter of law under § 12-821.01. *Cf. ELM Retirement Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 12 (App. 2010) (explaining that plaintiffs are not permitted "to hide behind [their] ignorance when a reasonable investigation would have alerted [them] to the claim").

### C.      Statutory Beneficiaries

**¶31** Relying on *Wilmot v. Wilmot*, 203 Ariz. 565 (2002) and *James v. State*, 215 Ariz. 182 (App. 2007), Plaintiffs argue that even if Humphrey's and Quinn's claims are statutorily barred, the 2010 notice and subsequent complaint were statutorily compliant as to Beneficiaries because "each beneficiary's claim, including when it accrued, must be separately evaluated" and each of the Beneficiaries avowed they lacked knowledge of any facts that would alert them of a possible claim against the State. Assuming without deciding that dismissal of a statutory plaintiff's liability action for failure to comply with § 12-821.01 does not extinguish the statutory beneficiary's claim to damages, we conclude the Beneficiaries' claims are barred under § 12-821.01. *Cf. Valder Law Offices v. Keenan Law Firm*, 212 Ariz. 244, 250–51, ¶ 21 (App. 2006) (stating that "a statutory plaintiff [is] the only party entitled to litigate liability," but beneficiaries have a right to participate in establishing damages because "[i]njuries, obviously, are unique to the particular beneficiary and not necessarily tied to the liability issues that the statutory plaintiff has the sole duty of prosecuting").

**¶32** We reiterate that claim accrual begins when a plaintiff is aware of an injury and has a reason to connect it to a particular cause such that "a reasonable person would be on notice to investigate whether the injury might result from fault." *Walk*, 202 Ariz. at 316, ¶ 22. The Beneficiaries knew they were injured when the accident occurred on a highway maintained by the State. The subsequent actions of their respective fathers illustrate that these facts created a reason to connect the

injury to the State "in such a way that a reasonable person would be on notice to investigate" whether the State was at fault long before the 2010 notice was filed. *Walk*, 202 Ariz. at 316, ¶ 22.

**¶33** Plaintiffs have failed to direct us to evidence in the record showing the Beneficiaries took any steps to investigate whether the State's maintenance or construction of the highway may have caused or contributed to their mothers' cross-over accident. Instead, the Beneficiaries rely on their absence of knowledge as support that the claim was tolled until everyone was specifically informed of the other cross-over accidents in 2010. For example, Sean Humphrey's affidavit states he "had not given any thought to a possible lawsuit involving [his mother's] death and . . . had no idea the State . . . might have done anything wrong in failing to provide a roadway barrier" before October 2010, when his father told him he was pursuing legal action against the State. We reject Plaintiffs' assertion that parties may receive the benefit of tolling simply because they fail to take any action to discover information relevant to the cause of an injury. Accepting that premise would run counter to the plain language and the purposes of §§ 12-821 and -821.01, as well as years of established precedent applying the discovery rule. *See ELM Retirement Ctr., LP*, 226 Ariz. at 290, ¶ 12.

**¶34** Viewing the evidence in the light most favorable to Plaintiffs, "a reasonable jury would not have a legally sufficient evidentiary basis" for a determination that any of the Plaintiffs complied with the notice of claim statute; therefore, their negligence claims are barred as a matter of law.[7]

---

7 Because the notice of claim was not timely filed, we need not address whether the complaint was also barred by the one-year statute of limitations under A.R.S. § 12-821. Nor do we consider the other issues raised on appeal. We note, however, that nothing in the record suggests the parties brought to the superior court's attention pertinent legislative amendments that would have permitted the notice of claim issue to be resolved in a different manner, namely, a 2012 statutory amendment that provides, "[i]f a genuine issue of material fact exists as to whether the requirements of this section have been complied with, the issue *shall be resolved before a trial on the merits* and at the earliest possible time." A.R.S. § 12-821.01(G) (emphasis added). Given the court's finding that there were genuine disputes of material fact concerning compliance with the notice of claim, it was procedurally improper for a jury to decide compliance issues at the same time as the trial on the merits. Based on our conclusion, whether

## II.    Cross-Appeal: Violation of A.R.S. § 39-121

¶35        Plaintiffs argue Judge Udall disregarded the law of the case by considering and granting the State's motion for partial summary judgment on their public records claim because Judge Ronan denied the State's initial motion, finding there was a question of fact as to whether ADOT had the information Humphrey requested.  Plaintiffs also argue the State's request was an "impermissible horizontal/lateral appeal."  We review the superior court's reconsideration of an earlier ruling for an abuse of discretion.  *Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, 332, ¶ 20 (App. 2009).

¶36        The "law of the case" is a procedural doctrine reflecting "the need for 'an end to litigation and a final decision the parties can rely on.'" *State v. King*, 180 Ariz. 268, 279 (1994) (citations omitted).  The doctrine is used when determining "whether a judge is bound to follow a prior decision made in the same case by another judge in the same court."  *Id.* at 278–79 (quoting 5 Am. Jur. 2d *Appeal and Error* § 744 (1962)).  As explained by our supreme court:

> At the trial court level, the doctrine of the law of the case is "merely a practice that protects the ability of the court to build to its final judgment by cumulative rulings, with reconsideration or review postponed until after a judgment is entered." . . . [I]t [does not] prevent a different judge, sitting on the same case, from reconsidering the first judge's prior, nonfinal rulings.

*Id.* at 279 (citations omitted).

¶37        Judge Ronan's denial of the State's initial motion for summary judgment was not a final, appealable order; thus, the law of the case doctrine is inapplicable except to the extent it encompasses the court's decision to permit a horizontal appeal, which "is a request that a second trial judge reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies reconsideration."  *Donlann v. Macgurn*, 203 Ariz. 380, 385, ¶ 29 (App. 2002) (quotation omitted); *see Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 278 (App. 1993) ("The policy against

the procedure outlined in § 12-821.01(G) would have affected the outcome here is moot.

horizontal appeals . . . forms part of the general concept of law of the case as applied to decisions of the same court.").

¶38　　　　Horizontal appeals are generally discouraged, and we have urged trial judges to "exercise caution when considering a motion that has already been denied by another judge." *Dunlap v. City of Phoenix*, 169 Ariz. 63, 66 (App. 1990). However, this policy is procedural, and judges have discretion to determine it should not be applied, especially "when an error in the first decision renders it manifestly erroneous or unjust or when a substantial change occurs in essential facts or issues, in evidence, or in the applicable law,"*Powell-Cerkoney*, 176 Ariz. at 279, or if the issue was not actually decided in the previous ruling or if the ruling is ambiguous, *Dancing Sunshines Lounge v. Indus. Comm'n*, 149 Ariz. 480, 483 (1986).

¶39　　　　The State's motion for partial summary judgment informed Judge Udall that the State previously sought dismissal of the public records claim but that Judge Ronan did not resolve the matter. In response, Plaintiffs argued Judge Ronan's ruling was dispositive because even though it did "not expressly deny the State's earlier motion . . . it [was] implicitly clear that Judge Ronan denied or intended to deny that motion." Given that both parties acknowledged Judge Ronan's ruling did not expressly decide the State's request to dismiss the public records claim, we cannot say Judge Udall abused his discretion in considering the State's subsequent motion for partial summary judgment.[8]

¶40　　　　Plaintiffs also argue that its public records claim must be re-instated because our decision in *Lunney v. State*, 244 Ariz. 170 (App. 2017), "imposes an affirmative duty and obligation on public officials to query and search databases and produce responsive public records." Plaintiffs contend Olson did not search ADOT's databases—she "simply conveyed that ADOT did not have the requested information," which Plaintiffs allege was false because "ADOT had copies of every responsive accident report in its possession."

¶41　　　　Judge Udall found that (1) the records requested did not exist, and the State could not be required to produce what it did not have; and (2) there was no practical way for the State to obtain the information Plaintiffs had requested. We agree with these findings. As we stated in *Lunney*,

---

8　　　　Because Plaintiffs have limited their argument on appeal to whether Judge Udall was precluded under the law of the case doctrine from issuing a ruling on the State's motion, we do not address the merits of his decision.

> Arizona's Public Records Law requires a state agency to "query and search its database to identify, retrieve, and produce responsive records for inspection" if the agency maintains public records in an electronic database. Agencies are not required to "tally and compile previously untallied and un-compiled information or data available" in an electronic database.

*Id.* at 177, ¶ 20 (citations omitted). We also explained that a distinction exists between "'searching an electronic database to produce existing records and data' and 'searching an electronic database to compile information about the information it contains.'" *Id.* (quoting *Am. Civil Liberties Union v. Ariz. Dep't of Child Safety* (ACLU), 240 Ariz. 142, 149, ¶ 18 (App. 2016)). Here, it is undisputed that in order to answer Humphrey's questions, ADOT would have had to engage in "hand analysis" by reviewing at least 37,000 accident reports on microfilm and determining which accidents were "cross-median accidents" resulting in fatalities. Neither *Lunney* nor *ACLU* would have required ADOT to "'tally or compile numerical or statistical information and percentages' and 'create a new record that compiles analytical information about information.'" *Lunney*, 240 Ariz. at 144, ¶ 22 (quoting *ACLU*, 240 Ariz. at 148, ¶ 17).

**¶42** As for Plaintiffs' suggestion that Olson had a duty to inform Humphrey that although ADOT could not compile the data, it had the raw data in the form of 37,000 accident reports that he could independently review, Plaintiffs do not cite supporting authority, and nothing in the plain language of § 39-121.01 imposes such a duty.

**CONCLUSION**

**¶43** We hold that Plaintiffs' claims for negligence are barred as a matter of law based on their failure to comply with the statutory requirements for timely asserting claims against a government entity. We therefore reverse the superior court's orders denying summary judgment/JMOL and remand for entry of judgment in favor of the State. We affirm the court's order granting summary judgment on Plaintiffs' public records claim.



AMY M. WOOD • Clerk of the Court
FILED: AA

20