IN THE

# Arizona Court of Appeals

## Division One

---

TIMERA QUINN, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

JULIO CARDENAS, *Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 22-0398
FILED 8-1-2023

---

Appeal from the Superior Court in Maricopa County
No.  CV2018-007278
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

---

COUNSEL

Bradley & Associates, Goodyear
By Percival R. Bradley
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Jones Skelton & Hochuli, P.L.C., Phoenix
By John T. Masterson, Michele Molinario, Justin M. Ackerman,
Derek R. Graffious
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**OPINION**

Judge Michael S. Catlett delivered the opinion of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

---

**C A T L E T T**, Judge:

¶1 Following a minor traffic accident, Timera Quinn ("Quinn") and Julio Cardenas ("Cardenas") got into an altercation. What made this conflict different is that, unbeknownst to Quinn, Cardenas was an off-duty City of Phoenix Police Officer. The altercation quickly escalated until Cardenas pulled his service weapon, revealed his status as a police officer, and detained Quinn while on-duty officers arrived.

¶2 Quinn brought four claims against Cardenas in superior court: a federal claim under 42 U.S.C. § 1983 (for excessive force), and three state law claims for assault, false imprisonment, and intentional infliction of emotional distress. After Cardenas removed the case to federal court, that court granted summary judgment for Cardenas on the § 1983 claim. The federal district court remanded the three state-law claims to state court.

¶3 The primary issue we answer is whether, on remand, a federal court's final judgment binds the superior court in any way. And if so, whether a final judgment is binding under preclusion principles (issue and claim preclusion) or, instead, the law of the case principles.

¶4 We hold that a federal court's final judgment is, upon remand, binding on the superior court under preclusion principles. We also conclude the federal court's final judgment granting Cardenas qualified immunity is, under the issue preclusion doctrine, fatal to her state law claims for assault and false imprisonment. We, therefore, affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶5 Quinn and Cardenas were involved in a traffic accident on the evening of May 14, 2017. The record is unclear how the accident came about or who caused it, but those matters are immaterial. What we do know is that Cardenas, who was off-duty, pulled off the interstate. Quinn, who was accompanied by two male passengers, drove behind him. At some point, their vehicles collided.

¶6        Cardenas then drove to a nearby gas station; Quinn followed. There, Quinn's male passengers exited the vehicle and one of them discussed the collision with Cardenas. Quinn's passengers returned to the vehicle, and Quinn began driving away before the parties exchanged identification or insurance information. Cardenas began running after Quinn's vehicle, causing Quinn to turn around and park. Quinn exited her vehicle and confronted Cardenas about who caused the accident and who failed to remain at the scene. At some point during the discussion, Quinn's two male passengers also exited.

¶7        Cardenas then utilized an "impact push" against Quinn. Using his two hands against her upper chest, Cardenas pushed Quinn while taking a step back. Quinn still did not know Cardenas was a police officer. So Quinn responded, pushing Cardenas. Cardenas then revealed his occupation; he drew his service weapon, announced he was a police officer, and ordered Quinn to return to her vehicle. Quinn complied. Eventually, on-duty police arrived and took control.

¶8        Quinn sued Cardenas in the superior court under § 1983 for allegedly violating her Fourth Amendment right to be free from excessive force. Quinn also asserted state law tort claims for assault, false imprisonment, and intentional infliction of emotional distress. Cardenas removed the case to the United States District Court for the District of Arizona, where it was assigned to the Hon. Michael T. Liburdi. The parties completed fact and expert discovery, after which Cardenas moved for summary judgment on all claims. The federal court granted Cardenas' motion concerning Quinn's § 1983 claim on qualified immunity grounds. Having disposed of the lone federal claim, the court remanded Quinn's state law claims back to the superior court. Quinn did not appeal the federal court's order and judgment.

¶9        On remand, Cardenas moved for summary judgment on the remaining tort claims, arguing in part that the federal judgment precluded re-litigation of the federal court's qualified immunity decision. The court granted the motion on the intentional infliction of emotional distress claim based on evidentiary shortcomings, but it otherwise denied the motion.[1]

¶10        A different superior court judge rotated onto the case. Shortly before trial, the parties filed a joint pretrial statement, with Cardenas again raising issue preclusion arguments. But this time, Cardenas' arguments

---

[1]        Quinn did not appeal this ruling, so the only claims at issue are her assault and false imprisonment claims.

focused on the federal court's factual findings and how they might impact jury instructions. The court ordered Quinn to address Cardenas' preclusion arguments. After oral argument, the court concluded that because there was a final federal judgment involving the same parties and the same issues, issue preclusion prohibited Quinn from moving forward with her assault and false imprisonment claims.

¶11 Quinn timely appealed. We have jurisdiction under A.R.S. § 12-2101.

## DISCUSSION

### I. Summary Judgment Timing

¶12 Before addressing the meat of the appeal, we address two preliminaries. First, Quinn asserts that the superior court's ruling stemmed from an untimely renewed motion for summary judgment tucked into Cardenas' joint pretrial statement. Cardenas responds that the court raised the summary judgment issue on its own under Rule 56(f). We review whether the superior court properly heard a motion, even an untimely one, for an abuse of discretion. *See State v. Vincent*, 147 Ariz. 6, 9 (App. 1985).

¶13 Under Rule 56(f)(3), "[a]fter giving notice and a reasonable time to respond, the court may: . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." After unsuccessfully moving for summary judgment on two of Quinn's claims, Cardenas, in the joint pretrial statement, again addressed the federal court's order and judgment and their impact on the surviving claims. The superior court held a status conference where this issue was discussed, and the court allowed Quinn to file a brief explaining why the surviving claims should be tried. While Quinn's brief is not part of the record because Quinn emailed it directly to opposing counsel and the court without ever filing it, Quinn concedes she complied with the court's order by providing a brief.[2] The court then held oral argument and ultimately concluded that the federal judgment precluded the state tort claims. Because the parties were given notice and an opportunity to respond, the superior court's judgment was procedurally permitted under Rule 56(f).

¶14 Additionally, trial courts serve an important function as gatekeepers to ensure only meritorious claims and defenses reach a jury.

---

[2] To aid appellate review, counsel should ensure that any briefs submitted directly to the superior court through email are also filed on the court's docket. *Cf.* Ariz. R. Civ. P. 7.1(a).

4

*See, e.g.*, *Booth v. State*, 207 Ariz. 61, 68 ¶ 20 (App. 2004); *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 102 ¶ 1 (App. 2017). Indeed, a superior court has the authority to "eliminate nonmeritorious claims or defenses" at a scheduling conference. Ariz. R. Civ. P. 16(d)(9). And courts must also "manage a civil action" with the objectives to (1) manage the court's calendar to eliminate unnecessary trial settings; (2) adhere to "applicable standards for timely resolution of civil actions"; and (3) conserve the parties' resources. Ariz. R. Civ. P. 16(A); *see also* Ariz. R. Civ. P. 1. The court did not abuse its discretion in disposing of claims it thought were non-meritorious in lieu of conducting an unnecessary jury trial.

## II.     Horizontal Appeal

**¶15**        Second, Quinn contends Cardenas asked Judge Astrowsky for an impermissible "horizontal appeal" of Judge McCoy's earlier decision denying summary judgment. "We review the superior court's reconsideration of an earlier ruling for an abuse of discretion." *Humphrey v. State*, 249 Ariz. 57, 67 ¶ 36 (App. 2020).

**¶16**        We refer to a request for "a second trial judge to reconsider the decision of the first trial judge in the same matter, even though no new circumstances have arisen in the interim and no other reason justifies reconsideration" as a "horizontal appeal." *Powell-Cerkoney v. TCR-Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 278–79 (App. 1993). A court cannot turn away a horizontal appeal simply to "justify [its] refusal to reconsider a ruling when an error in the first decision renders it manifestly erroneous or unjust[.]" *Id.* at 279. In such circumstances, "a second judge does not abuse his discretion by agreeing to reconsider an earlier decision." *Id.*; *Humphrey*, 249 Ariz. at 68 ¶ 39.

**¶17**        Cardenas argues the superior court did not violate the horizontal appeal doctrine because Judge Astrowsky was permitted to revisit a prior ruling if it was "palpably erroneous." Because summary judgment should have been granted earlier based on issue preclusion, he argues, any decision holding otherwise was erroneous.

**¶18**        We agree that Quinn's horizontal appeal argument ultimately turns on the correctness of Judge Astrowsky's final preclusion ruling. As an appellate court, we primarily review the content of final judgments. The horizontal appeal argument does not really get Quinn anything her challenges to the final judgment would not already get her—once final judgment is entered, the horizontal appeal argument largely collapses into the merits of the appeal. Think about it—if Judge Astrowsky correctly

decided the preclusion issue (reflected in the final judgment), Quinn's horizontal appeal argument (along with the rest of her appeal) fails. If he incorrectly decided the preclusion issue, we would reverse the final judgment on that basis, even if a prior ruling by the superior court once got the merits right. To the extent Quinn argues Judge Astrowsky might have been right in the end but the ruling he reversed was also not "palpably erroneous," we reject the argument as slicing the onion a bit too thin.

## III.    The Merits of the Superior Court's Preclusion Decision

**¶19**        Turning to the merits, Quinn argues the superior court erroneously granted summary judgment by concluding the federal order and judgment precluded her assault and false imprisonment claims. We review the superior court's grant of summary judgment *de novo*, affirming if there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Ariz. R. Civ. P. 56(a); *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71 ¶ 11 (App. 2011). We may affirm the grant of summary judgment on any grounds raised in the superior court. *See Zuck v. State*, 159 Ariz. 37, 42 (App. 1988).

### A.    Preclusion vs. Law of the Case

**¶20**        Quinn first questions whether a federal court judgment has preclusive effect when state law claims return after removal. Quinn argues that a federal court judgment should not have preclusive effect on remand because the state court action is the same as the action removed. With the mere continuation of an already-existing case, there is no second action in which to apply preclusion. Although Quinn's argument makes some sense, we conclude that preclusion, rather than law of the case, principles apply when litigation is removed to federal court, a final federal court judgment issues, and the case then completes the round trip back to state court for resolution of pendant state law claims.

**¶21**        Ordinarily, claim preclusion (once referred to as *res judicata*) "bars litigation in a *subsequent action* of any claims that were raised or could have been raised in the prior action" resulting in a final judgment. *Clem v. Pinal County*, 251 Ariz. 349, 353 ¶ 8 (App. 2021) (emphasis added). Similarly, issue preclusion (once referred to as collateral estoppel) prohibits the re-litigation of an issue actually litigated and decided in a final judgment. *See Brown v. Indus. Comm'n of Ariz.*, 199 Ariz. 521, 524 ¶ 11 (App. 2001). Litigants ordinarily invoke issue preclusion when, in a subsequent action, a party tries to litigate an issue decided after final judgment in a prior lawsuit.

**¶22** To enforce rulings made *in the same case*, the best a party can usually do is invoke the law of the case doctrine. That doctrine reflects the "judicial policy of refusing to reopen questions previously decided in the *same case* by the same court or a higher appellate court." *Powell-Cerkoney*, 176 Ariz. at 278 (emphasis added).

**¶23** The situation here does not fit perfectly within preclusion principles or the law of the case doctrine. On the one hand, the federal judgment is not a judgment from a prior action—it is a judgment on the federal claims *in this action* before remand. The superior court case number pre-remand is the same post-remand. So applying preclusion is a bit awkward. On the other hand, a federal district court is neither the same as the superior court nor a court maintaining appellate jurisdiction over the superior court. So applying the law of the case doctrine is likewise awkward.

**¶24** This quandary has split other state courts—some have applied preclusion principles after remand from federal court, and others have used the law of the case doctrine. *Compare Stewart v. City of Hammond*, 322 So. 3d 1253, 1257 (La. Ct. App. 2021) (applying preclusion principles); *Massad v. Greaves*, 977 A.2d 662, 668 (Conn. App. Ct. 2009) (same), *with Cordova v. Larsen*, 94 P.3d 830, 834 ¶ 10 (N.M. Ct. App. 2004) (applying the law of the case doctrine); *Hess v. Wojcik-Hess*, 86 A.D.3d 847, 848 (N.Y. App. Div. 2011) (same).

**¶25** We think applying preclusion principles is the better path. Under the U.S. Constitution, "both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1475 (2018). The federal courts are part and parcel of that dual sovereignty. Treating a final judgment from a federal court under preclusion principles is most consistent with that system, particularly when (as explained below) we apply federal law to determine the preclusive effect of a federal judgment. *See Clem*, 251 Ariz. at 353 ¶ 7. Using preclusion principles "helps maintain the integrity of federal judicial power and the coherence of the federalist judicial system." *Maricopa-Stanfield Irrigation & Drainage Dist. v. Robertson*, 211 Ariz. 485, 491 ¶ 38 (2005).

**¶26** Ordinarily, when a party seeks to re-litigate a claim or issue rejected by a federal court resulting in a final judgment issued *in a different action*, preclusion principles apply. *See id.* at 491–92 ¶¶ 39–43 (applying issue preclusion principle to a prior federal judgment). Moreover, preclusion can apply in the same action when a trial court certifies a

judgment as final under Arizona Rule of Civil Procedure 54(b). *See Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (acknowledging that "a 54(b) ruling in fact has *res judicata* ramifications, which are potentially very important"). We see no compelling reason—and Quinn offers none—why preclusion should not also apply when a party seeks to re-litigate a claim or issue decided in a final judgment issued in the same case after removal but prior to remand.

¶27        Applying the law of the case doctrine instead of preclusion is less consistent with dual sovereignty. Treating a final judgment from a federal court the same as a ruling issued in the same case by the superior court or a higher appellate court, ignores that federal and state courts operate within separate and sovereign judicial systems—a "federalist judicial system." *Id.* at 491 ¶ 38.

¶28        Moreover, it is doubtful that applying preclusion principles instead of law of the case will make it *easier* for federal judgments to have a binding effect. Rather, in most circumstances, applying preclusion principles will make it more difficult to cut off state court litigation. *Compare Clem*, 251 Ariz. at 356 ¶ 18 (discussing federal issue preclusion standard), *with Powell-Cerkoney*, 176 Ariz. at 279 (discussing Arizona law of the case doctrine). Using preclusion principles, thus, strikes the proper balance between respecting federalism, by showing respect for federal court judgments, and not prematurely cutting off additional state court litigation.

¶29        The U.S. Supreme Court has acknowledged that a federal court's decision before remand may have issue preclusive effects. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("If a federal court dismisses a removed case for want of personal jurisdiction, that determination may preclude the parties from relitigating the very same personal jurisdiction issue in state court."). This Court's only prior opinion dealing with the issue has, without discussion, implicitly followed that path by applying preclusion principles. *See S. Leasing Corp. v. Tufts*, 167 Ariz. 133 (App. 1991). We now hold that the preclusive effect of a federal court judgment travels back with it to the superior court after remand, even in the same case.

## B.    Issue Preclusion Applies

¶30        We determine the preclusive effect of a prior judgment *de novo*. *Clem*, 251 Ariz. at 353 ¶ 7. When a federal court entered the prior judgment at issue, we apply federal law to determine whether the judgment

precludes later state court litigation. *Id.* In any event, Arizona courts apply the same issue preclusion test as federal courts. *Compare Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *with Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986).

**¶31**         As explained, there are two types of preclusion—claim and issue. Claim preclusion "treats a judgment, once rendered as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988). Issue preclusion, similarly based on the issuance of a prior final judgment, "prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding.'" *Id.* at 322 (citation omitted). An issue may be precluded from re-litigation "even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Because Quinn's § 1983 claim differs from her state-law assault and false imprisonment claims, issue preclusion is the only potentially applicable preclusion doctrine.

**¶32**         A party asserting issue preclusion must prove: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceeding; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran*, 672 F.3d at 806. We conclude the federal court's final judgment satisfies each requirement.

### 1.      Identical Issues

**¶33**         Quinn argues the federal judgment cannot preclude her tort claims because those claims are not governed by federal qualified immunity standards, and thus the issues are not identical. To determine whether issues are identical, federal courts apply the following four factors from the Restatement (Second) of Judgments:

> (1) [I]s there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? (2) does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding? (3) could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? (4) how closely related are the claims involved in the two proceedings?

*Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017); *accord Clem*, 251 Ariz. at 356 ¶ 20. We are not required to apply the factors mechanically but should instead use them as a helpful guide in assessing whether issues are identical. *See Howard*, 871 F.3d at 1041–44 (holding that the issues were identical after finding only the first restatement factor was "illuminating").

### a. Substantial Overlap of Evidence

**¶34** In the federal litigation, Cardenas maintained that his actions were constitutional but also asserted qualified immunity as a defense to Quinn's § 1983 claim. Quinn points out that resolving a federal qualified immunity defense does not address her assault or false imprisonment claims. That is correct so far as it goes. But Quinn's argument misses at least two points. First, the evidence and arguments underlying her assault and false imprisonment claims overlap substantially with the evidence and arguments supporting her § 1983 claim based on excessive force. In fact, the evidence underlying each of those claims is identical. Second, while Quinn's assault and false imprisonment claims may not have identical elements as her § 1983 claim, Quinn does not dispute that, when the applicable elements are satisfied, state-law qualified immunity can apply to assault and false imprisonment claims, just as federal qualified immunity applied to her § 1983 claim.[3] The issues underlying those defenses are substantially overlapping and thus governed by nearly identical arguments.

**¶35** Federal qualified immunity bars recovery of monetary damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Federal qualified immunity is said to combat "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The Ninth Circuit has explained that "[i]n excessive

---

[3] Because Quinn does not argue that state-law qualified immunity is wholly inapplicable to an assault or a false imprisonment claim, we assume for purposes of our analysis that qualified immunity can apply to those claims (and not just negligence claims). *But see Chamberlain v. Mathis*, 151 Ariz. 551, 558 (1986) (applying state-law qualified immunity to a defamation claim); *McKinney v. City of Tukwila*, 13 P.3d 631, 641 (Wash. App. 2000) ("Having found that the officers' use of force was reasonable, we find that they are entitled to state law qualified immunity for the assault and battery claims.").

force cases, the inquiry remains whether, under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and whether any mistake to the contrary would have been unreasonable." *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (cleaned up).

**¶36** Similarly, in Arizona, "qualified immunity generally provides public officials, including police officers, limited protection from liability when 'performing an act that inherently requires judgment or discretion.'" *Spooner v. City of Phoenix*, 246 Ariz. 119, 123 ¶ 9 (App. 2018). "The doctrine thus gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation marks omitted). If an officer is performing a discretionary act within the scope of his public duties, he can only be liable if he "knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Chamberlain*, 151 Ariz. at 558. "If immunity applies, an officer is shielded from liability unless the conduct rises to gross negligence or recklessness." *Jennings v. Agne in & for Cnty. of Maricopa*, 254 Ariz. 174, __ ¶ 15 (App. 2022).

**¶37** Both federal and state qualified immunity require an analysis of whether Cardenas violated established law or unreasonably disregarded the unlawful nature of his conduct. Because the evidence and arguments required to resolve either qualified immunity defense are nearly the same (at least in the context of excessive force), we conclude there is a substantial overlap between the issues.

### b. Remaining Identical Issue Factors

**¶38** Additionally, the parties completed discovery and summary judgment briefing on all issues in federal court before remand. No additional discovery was later conducted back in state court. Indeed, in the order remanding, the federal court "anticipate[d] that the parties could refile the same or substantially similar summary judgment briefing on the state law claims in state court with limited additional effort." *Quinn v. Cardenas*, 2020 WL 2512787, at *5 (D. Ariz. May 15, 2020). And that is exactly what transpired. This factor supports Cardenas.

**¶39** Both the second and fourth restatement factors also support that the issues are identical. *See Howard*, 871 F.3d at 1041–44. As explained, although Quinn's assault and false imprisonment claims do not share elements with her § 1983 claim, Cardenas' federal and state qualified

11

immunity defenses are substantially similar because both involve a similar standard. In other words, both require the application of a similar rule of law—whether Cardenas, under the circumstances, unreasonably violated established law. Consequently, we hold that the issues are identical for the purposes of issue preclusion.

### 2. Remaining Issue Preclusion Factors

**¶40** The remaining issue preclusion factors are also satisfied. The parties actually litigated, and the federal court decided, whether Cardenas acted reasonably under the circumstances. Resolution of that issue was necessary to determine the merits of the federal qualified immunity defense. Finally, there was a full and fair opportunity to litigate the issue. The parties completed discovery and full summary judgment briefing in federal court, and Quinn does not argue that she was deprived in federal court of the opportunity to fully develop any evidence necessary to overcome Cardenas' qualified immunity defense. Consequently, on remand, the federal court's resolution of issues was binding on the parties.

### C. Effect of Issue Preclusion

**¶41** The superior court correctly concluded that, applying issue preclusion principles, the federal court's resolution of federal qualified immunity is fatal to Quinn's state law claims. The federal court recognized that the altercation between Quinn and Cardenas resulted in three events that could "give rise to liability under § 1983": (1) Cardenas' impact push against Quinn; (2) Cardenas pulling his weapon when he announced he was a police officer; and (3) Cardenas ordering Quinn to remain in her car until police arrived. *Quinn*, 2020 WL 2512787 at *3. These three circumstances provide the underlying factual basis for Quinn's assault and false imprisonment claims. The federal court held that under each set of facts, Quinn failed to meet her burden to show clearly established law prohibited Cardenas' actions, holding instead that Cardenas was justified and acted as a reasonable officer would at each turn. *Id.* at *3–4.

**¶42** First, the federal court recognized that for liability to arise under § 1983, Cardenas had to have been acting under color of law during the events in question. *Id.* at *3 n.5. The federal court found that "[t]he parties agree that Officer Cardenas was acting under color of law during his interaction with Ms. Quinn." *Id.* The federal court then analyzed each of the three events. Regarding the impact push, the federal court found as follows:

Here, Ms. Quinn has *failed to satisfy her burden that clearly established law would have prohibited Officer Cardenas' impact push under the presented circumstances.* Officer Cardenas utilized the impact push to create distance between himself, on the one hand, and Ms. Quinn and her two male passengers, on the other. Officer Cardenas and Ms. Quinn were engaged in a shouting match at close proximity. *From the perspective of a reasonable officer, the situation could have deteriorated to a much more serious altercation where Officer Cardenas would be outnumbered three to one and without knowledge of whether any of the individuals were armed.*

*Id.* at *3 (emphasis added).

¶43 Regarding Cardenas pulling his weapon and announcing he was a police officer, the federal court likewise found the following:

Ms. Quinn has similarly *failed to show that established law would have prohibited Officer Cardenas' use of his service weapon under the circumstances presented* . . . . [Officer Cardenas] used [his weapon] with the objective of calming a heated verbal altercation, that could very well have led to a physical exchange, while waiting for on-duty law enforcement to arrive . . . . Ms. Quinn's interaction with Officer Cardenas cannot be described as peaceful. She engaged in a verbal argument with him and, at one point, shoved him hard enough that he was pushed back from where he stood . . . . Officer Cardenas thought that Ms. Quinn was attempting to leave the scene in her car . . . . Officer Cardenas was outnumbered by Ms. Quinn and her two friends . . . . And Officer Cardenas was not aware of whether any of the three had a weapon that he did not know about. *Under these facts, a reasonable officer would be concerned for his or her safety and the use of Officer Cardenas' weapon was therefore justified for the purposes of the qualified immunity analysis.*

*Id.* at *3–4 (emphasis added).

¶44 Finally, the federal court concluded, "Ms. Quinn has not identified any established law that prohibited Officer Cardenas from holding Ms. Quinn, with his weapon in hand, while waiting for on-duty officers to arrive." *Id.* at *4. Based on these findings, the federal court granted Cardenas' request for qualified immunity. *Id.* at *5.

13

¶45        The federal court's resolution of the issues underlying federal qualified immunity, unchallenged by Quinn, doom her state-law assault claim. The federal court concluded Cardenas acted in his official capacity during each of the underlying incidents. *Id.* at *3 n.5. The federal court then found that Cardenas acted as a reasonable officer would; Cardenas was justified in employing an impact push against Quinn and then pulling his weapon and announcing himself as a police officer. *Id.* at *3–4. Those same conclusions—that Cardenas acted as a reasonable officer would and did not violate clearly established law—preclude the opposite finding in state court (*i.e.*, a finding that Cardenas violated established law and was grossly negligent or reckless in doing so). The federal court's findings entitle Cardenas to state qualified immunity from that claim. *See Chamberlain*, 151 Ariz. at 558.

¶46        Turning to Quinn's false imprisonment claim, the federal court resolved qualified immunity against Quinn by finding that "Cardenas thought that Ms. Quinn was attempting to leave the scene in her car." *Quinn*, 2020 WL 2512787 at *4. A "driver of a vehicle involved in an accident" must give the other person certain information including their name and address. A.R.S. § 28-663(A). Failure to do so can be a misdemeanor offense. A.R.S. § 28-663(C). A police officer may arrest an individual without a warrant "if the officer has probable cause to believe . . . [a] misdemeanor has been committed in the officer's presence and probable cause to believe the person to be arrested has committed the offense." A.R.S. § 13-3883(A)(2). And an officer cannot be liable for false imprisonment if he "act[ed] in good faith in the lawful performance of his duty." A.R.S. § 13-1303(B)(1).

¶47        Both parties agree they had not exchanged information after the accident when Quinn started to leave the scene, and Quinn is precluded from re-litigating the federal court's finding that Cardenas was acting in his official capacity and reasonably believed Quinn was attempting to leave before providing required information. Thus, Cardenas was lawfully allowed to detain Quinn, who Cardenas reasonably believed had violated the law. *See* A.R.S. § 28-663(A); A.R.S. § 13-3883(A)(2). Based on the federal court's findings, the superior court correctly concluded Quinn cannot succeed on her false imprisonment claim as a matter of law.

¶48        Because, for Quinn to prevail on her assault and false imprisonment claims, a jury would have to reach conclusions contrary to those the federal court reached, we hold the superior court properly precluded further litigation of Quinn's assault and false imprisonment claims.

## CONCLUSION

¶49  We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: AA