NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT LEATHAM and KRISTY LEATHAM; RYAN KELLEHER;
PHILIP ASIEDU-DARKWA and MORCELIA ASIEDU-DARKWA;
RUSSELL SKINNER, in his official capacity as Maricopa County Sheriff,
*Petitioners*,

*v.*

LISA YEARICK, individually and as Personal Representative of the Estate
of Edward Rudhman; LEIGHA HUBER, *Respondents*.

No. 1 CA-SA 24-0200[1]
FILED 02-03-2025

Petition for Special Action from the Superior Court in Maricopa County
No. CV 2019-015407
The Honorable Christopher Whitten, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Charles E. Trullinger, Courtney R. Glynn, Sean M. Moore
*Counsel for Petitioners*

---

[1] The Court exercises its discretion to adopt a caption consistent with the new Arizona Rules of Procedure for Special Actions, effective January 1, 2025, which no longer list judges as respondents. Ariz. R.P. Spec. Act. 5(b)(2) (effective January 1, 2025).

Zwillinger Wulkan PLC, Phoenix
By Larry Wulkan, Benjamin L. Rundall, Jennifer L. Allen
*Counsel for Respondent Lisa Yearick*

Law Offices of J. Scott Halverson PC, Tempe
By J. Scott Halverson
*Counsel for Respondent Leigha Huber*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Kent E. Cattani joined.

---

**J A C O B S**, Judge:

¶1        This wrongful death lawsuit was filed by Edward Rudhman's widow, Lisa Yearick, and his mother, Leigha Huber (collectively "the Survivors"). Rudhman was killed by three deputies of the Maricopa County Sheriff's Office ("MCSO") responding to a 9-1-1 call concerning Rudhman's threat to kill himself. Defendants ("the Officers") unsuccessfully moved for summary judgment in the superior court, arguing that Ninth Circuit rulings on the dismissed federal claims in this case should bar the Survivors' remaining state law claims. The Officers then asked us to exercise our special action jurisdiction to review that denial, arguing: (1) the Ninth Circuit ruling that federal qualified immunity applied bars the Survivors from arguing Arizona's common law of qualified immunity does not apply; and (2) Arizona common law of qualified immunity bars the Survivors' suit. For the following reasons, we accept jurisdiction but deny relief.

**FACTS AND PROCEDURAL HISTORY**

¶2        Because this special action comes to us from the denial of a motion for summary judgment, we "view the facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Southwest Auto Painting & Body Repair Inc. v. Binsfeld*, 183 Ariz. 444, 445 n.1 (App. 1995).

### A.        Rudhman Is Fatally Shot by Deputies After a 9-1-1 Call.

¶3        On December 16, 2018, Yearick called 9-1-1 to report that Rudhman was threatening to kill himself and their animals. Yearick also

2

said Rudhman had been drinking, had a gun, and that she feared for his life. Yearick stated she didn't want anything to happen to Rudhman and didn't "want him to hurt anybody else." During the 9-1-1 call, Rudhman shot the gun several times. Yearick reported she was afraid and had locked herself in her bedroom. Rudhman then came inside and broke into Yearick's bedroom while she was still on the phone with 9-1-1. Yearick asked Rudhman to give her the gun. He refused. He then left the room, and she relocked the door. Rudhman then returned to Yearick's bedroom, saying he would give her the gun if she agreed to shoot him. Yearick refused to open the bedroom door.

¶4            Deputies then arrived at the home. They began to inspect the area and set up defensive positions, including setting up two vehicles in the driveway for cover. Deputies were informed that Rudhman had a loaded handgun on his person. After they set up their positions, Sergeant Robert Leatham used the public address system of his patrol vehicle to instruct Rudhman to come out of the house without his gun. After Sergeant Leatham made five announcements from the vehicle over the span of three minutes, Rudhman emerged from the front door of the home. Deputies observed Rudhman carrying a large caliber revolver in his right hand.

¶5            Rudhman began walking toward the driveway and then in the deputies' direction. As Rudhman approached, Sergeant Leatham gave five more commands to Rudhman to drop the gun and to stop advancing toward the deputies. Rudhman disregarded the commands, saying he would not follow them. Because the Survivors are the nonmovants in the motion for summary judgment at issue, we presume, as prior courts have, that Rudhman held the gun at his side when approaching the deputies. *See Yearick v. Leatham*, No. 22-16310, 2023 WL 5928486, at *1 (9th Cir. Sept. 12, 2023); *Yearick v. County of Maricopa*, No. 20-00545, 2022 WL 3721910, at *3 (D. Ariz. Aug. 19, 2022). We also agree with both courts that the record, including body-worn camera footage, does not contradict the Survivors' contention that Rudhman held the gun in his right hand, by his side, swinging it lightly as he walked, and never raised or pointed the gun at deputies. *Leatham*, 2023 WL 5928486, at *1 ("[W]e find that the record does not blatantly contradict [the Survivors'] view of the facts[.]"); *County of Maricopa*, 2022 WL 3721910, at *3 (resolving issue in favor of Survivors where body camera recordings "largely support[]" Survivors' contentions but do not clearly show intricacies of Rudhman's movement of the gun).

¶6            Rudhman advanced on the deputies for 24 seconds and closed the distance between them by 40 feet. One deputy was getting prepared to call out for the others to use less-lethal fire. Without

3

communication among the deputies or specific warning to Rudhman, three of the five deputies fired seven lethal rounds on Rudhman. Sergeant Leatham immediately reported to dispatch that shots were fired and called for an ambulance. Deputies then approached Rudhman and found the revolver cocked and loaded underneath his stomach.

### B. The Survivors File This Suit in the Superior Court and It Is Removed to the District Court.

¶7          The Survivors filed this lawsuit in the superior court in December 2019, alleging the Officers were liable under 42 U.S.C. § 1983 because the deputies' conduct violated Rudhman's Fourth Amendment rights. They also claimed the Officers were liable for the wrongful death of Rudhman under A.R.S. § 12-611 because they breached their duties to use only necessary and reasonable force, which resulted in the death of Rudhman. The Officers then removed the case to the United States District Court for the District of Arizona.

### C. The District Court Granted the Officers Summary Judgment.

¶8          The Officers moved for summary judgment on all claims. They argued that federal qualified immunity barred the Survivors' Section § 1983 claim as a matter of law. They also argued that Arizona's justification statute, A.R.S. § 13-410, insulated them from liability for wrongful death because their conduct was reasonable as a matter of law. The district court agreed, granting summary judgment for the Officers on both claims.

¶9          The district court noted the only disputed fact in the case was the manner in which Rudhman held the gun while approaching the deputies. After reviewing the body camera recordings, the district court presumed the gun was held at Rudhman's side, as the Survivors argued. Because it was unclear from the briefs, the district court presumed the Survivors were proceeding on a theory of battery for the wrongful death claim.

¶10          The court first analyzed the Survivors' excessive force claim under 42 U.S.C. § 1983. First, the court found no clearly established law gave the Officers fair notice their conduct was unconstitutional. Second, the court found that, even if there was such clearly established law, their conduct was objectively reasonable. Given these findings, the district court ruled that federal qualified immunity protected the Officers from liability.

¶11            Next, the court analyzed whether Arizona's justification statute, A.R.S. § 13-410, shielded the Officers from liability for wrongful death.    Because the court found the deputies' conduct objectively reasonable, it found no fact issue as to whether the use of force was justified. *See* A.R.S. § 13-410(C) (stating that an officer's use of deadly force against another is justified when the officer "reasonably believes that it is necessary . . . [t]o defend himself or a third person from what the . . . officer reasonably believes to be the . . . imminent use of deadly physical force[]").    It thus entered judgment for the Officers on the wrongful death claim.    Judgment followed.

### D.    The Survivors Appeal the Summary Judgment for the Officers, and the Ninth Circuit Reverses the Summary Judgment as to the Wrongful Death Claim.

¶12            The Survivors appealed the district court's grant of summary judgment to the Officers on both claims.  The Ninth Circuit affirmed in part and reversed in part, remanding the case back to the district court. *Leatham*, 2023 WL 5928486, at *4.

¶13            First, the Ninth Circuit affirmed summary judgment on the Section 1983 claim, agreeing that federal qualified immunity applied. *Id.* at *2-3.    The court applied a test, both prongs of which the Survivors had to overcome to defeat qualified immunity:    (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Leatham*, 2023 WL 5928486, at *1.  The Ninth Circuit held that the district court erred in finding no violation of Rudhman's Fourth Amendment rights. *Id.* at *1-2.  To the contrary, the court held "[a reasonable] jury could . . . conclude that the [deputies'] decision to shoot Rudhman was not objectively reasonable and that, by shooting Rudhman, the [deputies] violated his Fourth Amendment right to be free of excessive force." *Id.* at *2.  The court nonetheless agreed with the district court that the right was not clearly established when Rudhman was shot. *Id.*    The Ninth Circuit thus affirmed summary judgment on the Section 1983 excessive force claim. *Id.*

¶14            Next, the Ninth Circuit reversed the summary judgment for the Officers on the Survivors' wrongful death claim. *Id.* at *3.  The Ninth Circuit did not address whether Arizona common law qualified immunity applied. *See id.* Rather, it looked to whether Arizona's justification statute, A.R.S. § 13-410(C)(1), was satisfied as a matter of law. *Id.*  Having found that a reasonable jury could conclude the deputies' conduct was unreasonable, and that the justification statute only protects officers if their

use of deadly force was reasonably necessary, the Ninth Circuit reversed this grant of summary judgment in favor of the Officers and remanded this claim to the district court. *Id.*

¶15 On remand, the district court declined to exercise supplemental jurisdiction over the wrongful death claim and remanded the case to the superior court. On remand, the superior court ordered the parties to brief whether: (1) issue preclusion applied to Arizona common law qualified immunity despite the Ninth Circuit's finding that the deputies' conduct was not objectively reasonable; (2) the Arizona wrongful death claim was substantially similar to the Section 1983 claim even though the Ninth Circuit held a jury could find the deputies' conduct was unreasonable; and (3) to what degree Arizona's justification statute, A.R.S. § 13-410(C), functions as an affirmative defense or as Arizona common law qualified immunity.

### E. The Officers Unsuccessfully Seek Summary Judgment in the Superior Court, Arguing They Are Immune From Suit.

¶16 The Officers again moved for summary judgment on the state wrongful death claim. They argued summary judgment was proper because *Quinn v. Cardenas*, 256 Ariz. 77 (App. 2023) requires the superior court to find the Ninth Circuit's application of federal qualified immunity issue preclusive of the application of Arizona's qualified immunity.

¶17 The superior court denied the Officers' motion for summary judgment. The superior court distinguished *Quinn*, finding it did not require the court to apply issue preclusion. As the superior court noted, unlike *Quinn*, the Ninth Circuit had held that a jury could conclude that the deputies' decision to shoot Rudhman was not objectively reasonable. The court noted that finding the Ninth Circuit's decision issue preclusive as to Arizona qualified immunity would lead to an "absurd result" because the Ninth Circuit explicitly found a fact question on the issue of reasonableness. Indeed, the Ninth Circuit decision drew a dissent lamenting that the Officers would face a trial on the Survivors' state law claims. The superior court also agreed with the Survivors that under *Spooner v. City of Phoenix*, 246 Ariz. 119 (App. 2018), Arizona qualified immunity does not apply, and that "the correct analysis is whether the conduct of the involved officers was justified."

¶18 The Officers filed this special action seeking review of superior court's order denying their motion for summary judgment.

## DISCUSSION

### I. We Accept Special Action Jurisdiction.

**¶19** The Rules of Procedure for Special Actions guide us as we consider whether to accept jurisdiction. Ariz. R.P. Spec. Act. 12(b). That this special action concerns immunity from suit militates in favor of exercising our discretionary jurisdiction. Ariz. R.P. Spec. Act. 12(b)(2); *Tucson Unified Sch. Dist. v. Borek*, 234 Ariz. 364, 367 ¶ 5 (App. 2014) ("Although we normally disfavor accepting special action jurisdiction to review the denial of a motion for summary judgment, . . . questions concerning immunity are particularly appropriate for special action review[.]"). Deciding this issue now also "materially advance[s] the efficient management of the case" and concerns an issue not presented in ordinary dispositive motion practice. Ariz. R.P. Spec. Act. 12(b)(7). We thus exercise our discretion to accept jurisdiction.

### II. The Superior Court Did Not Err By Denying the Officers' Motion for Summary Judgment.

**¶20** The Officers contend the superior court erred by denying their motion for summary judgment because (1) *Quinn* precluded the court from finding Arizona common law qualified immunity inapplicable as to the wrongful death claim, and (2) even without preclusion, Arizona common law qualified immunity applies because qualified immunity is applicable to the deputies' intentional conduct.[2]

**¶21** We review a superior court's denial of summary judgment de novo. *BMO Harris Bank N.A. v. Espiau*, 251 Ariz. 588, 590 ¶ 8 (App. 2021) ("[W]e may review the [denial of summary judgment] if the denial was based on purely legal grounds.") (cleaned up). We will reverse the denial of summary judgment where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See Quinn*, 256 Ariz. at 83 ¶ 19 (affirming a grant of summary judgment where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law); *Bernal v. Loeks*, 196 Ariz. 363, 364 ¶ 6 (App. 2000) (stating the standard for reviewing the denial or grant of summary judgment is the same as "ruling on the motion in the first instance[]").

---

[2] The Officers do not argue Arizona's justification statute, A.R.S. § 13-410(C), entitles them to summary judgment.

**A.** **The Superior Court Is Bound by the Ninth Circuit's Decision, But It Does Not Mandate Entry of Summary Judgment for the Officers on the Wrongful Death Claim.**

¶22 The Officers argue this Court's decision in *Quinn* precludes the superior court's finding that Arizona's common law qualified immunity does not apply. Specifically, the Officers contend issue preclusion governs the application of Arizona qualified immunity because the Ninth Circuit held there was no clearly established right at the time deputies shot Rudhman. Although we agree issue preclusion applies to the Ninth Circuit's decision, it does not provide the deputies with qualified immunity from the Survivors' wrongful death claim.

¶23 This Court has previously held that preclusion principles apply where a federal court judgment has been entered in a case that has been remanded back to the superior court. *Quinn*, 256 Ariz. at 84 ¶ 29. We determine the preclusive effect of a prior judgment de novo. *Id.* at 84 ¶ 30.

¶24 We apply the preclusion law of the court that rendered the prior judgment – here, the Ninth Circuit – but federal and Arizona law are the same on this point. *Id.*; *see also In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69 ¶ 13 (2006) ("Federal law dictates the preclusive effect of a federal judgment."). Thus, for the Ninth Circuit's decision to preclude the Survivors' suit, the Officers must demonstrate: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings [in favor of the party invoking preclusion]; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012); *see also Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573 (1986) (stating that for issue preclusion to apply, issue must be "actually litigated . . . , a final judgment was entered, and the party against whom the doctrine is to be invoked had a full and fair opportunity to litigate").

### 1. The Issues Are Identical in Both Proceedings.

¶25 The Officers argue the issues underlying the Section 1983 claim and the state wrongful death claim are identical. Federal courts consider four factors in determining whether issues are identical:

> (1) [I]s there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? (2) [D]oes the new evidence or argument involve the application of the same rule of law as

that involved in the prior proceeding? (3) [C]ould pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second? (4) [H]ow closely related are the claims involved in the two proceedings?

*Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017). The factors are not applied "mechanistically." *Id*. We discuss each factor in turn.

**¶26** *First*, the evidence and argument for both claims and the affirmative defense raised, qualified immunity, overlap substantially. Both arise from the same sequence of events: the conduct before and the shooting of Rudhman, so evidence for both claims would be nearly identical. The argument regarding the claims also overlaps: although the claims require the Survivors to prove different elements, the defense the Officers raise – qualified immunity – requires them to prove almost exactly the same things in the state proceeding. *See Quinn*, 256 Ariz. at 85-86 ¶¶ 34-37.

**¶27** In Arizona, officers have qualified immunity "when performing an act that inherently requires judgment or discretion." *Spooner*, 246 Ariz. at 123 ¶ 9 (cleaned up). However, Arizona's qualified immunity does not apply where Survivors can demonstrate one of two things: the deputies either "knew or should have known [they were] acting in violation of established law *or* acted in reckless disregard of whether [their] activities would deprive another person of their rights." *Chamberlain v. Mathis*, 151 Ariz. 551, 558 (1986) (emphasis added) (treating these pathways to overcome immunity disjunctively).

**¶28** Federal qualified immunity, by contrast, applies unless two factors are both present: "a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In excessive force cases, "the inquiry remains whether, under the circumstances," officers acted unreasonably, thus violating a right, and if the right was clearly established, meaning officers "had fair notice that the force employed was unlawful[.]" *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (cleaned up).

**¶29** In *Quinn*, we found substantial overlap among federal and state qualified immunity where the claims were a Section 1983 claim, a state false imprisonment claim, and a state assault claim. 256 Ariz. at 85 ¶ 34.

We found that both federal and state qualified immunity "require analysis of whether [the official] violated established law or unreasonably disregarded the unlawful nature of his conduct." *Id.* at 86 ¶ 37. As we held in *Quinn*, the issues underlying Arizona common law qualified immunity and federal qualified immunity substantially overlap because both analyze whether there was a clearly established right, whether a right was violated, and whether the deputies acted unreasonably. *See id.*

¶30 *Second*, as in *Quinn*, Arizona common law qualified immunity and federal qualified immunity are identical for issue preclusion purposes. As we recognized in *Quinn*, federal and state qualified immunity employ very similar standards – "whether [the official] violated established law or unreasonably disregarded the unlawful nature of his conduct." *Id.* at 86 ¶¶ 37, 39.

¶31 *Third*, discovery in the federal court could have been reasonably expected to have embraced the state law claim, as the claims arise from the same sequence of events.

¶32 *Fourth*, the claims are closely related. Both arise from the same series of events. The standards for both Arizona and federal qualified immunity mandate the Survivors prove the deputies conduct to be reasonable and that a right be violated. *Id.*

¶33 Thus, as in *Quinn*, we find the issues underlying the claims to be identical.

2.      **The Issues Were Actually Litigated in the Federal Proceedings But Were Not All Decided in Favor of the Officers.**

¶34 We next determine if the issues underlying the state law claim (wrongful death) and the affirmative defense raised (Arizona qualified immunity) were actually litigated and decided by the federal courts in favor of the Officers. The parties conducted discovery on the state law claim and the Section 1983 claim. When the Officers moved for summary judgment on all claims, the parties briefed federal qualified immunity as well as Arizona's justification statute. Because the issues underlying federal and Arizona qualified immunity are identical, the parties actually litigated the issues underlying the state wrongful death claim and Arizona qualified immunity.

¶35 Despite that, the federal courts did not decide all issues underlying the wrongful death claim and Arizona qualified immunity in

favor of the Officers. The Ninth Circuit only affirmed the district court's grant of summary judgment on the Section 1983 claim, finding the Survivors could not establish that the deputies violated clearly established law under federal qualified immunity because they were not on notice that Rudhman had a right to be free from lethal force under the circumstances. But the court did not find the deputies' conduct to be objectively reasonable, instead finding a fact question as to reasonableness, such that a jury could find the deputies' conduct unreasonable. After making these findings, the court reversed the grant of summary judgment on the Arizona wrongful death claim and expressly declined to decide whether the deputies' use of force violated Arizona law.

¶36        In sum, Arizona law permits the Survivors to overcome qualified immunity by demonstrating the deputies either (1) "knew or should have known [they were] acting in violation of established law *or* [(2)] acted in reckless disregard of whether [their] activities would deprive another person of their rights." *Chamberlain*, 151 Ariz. at 558 (emphasis added). The Ninth Circuit actually decided the first issue – whether officers knew or should have known they violated established law – by holding the Officers were not on notice of Rudhman's right to be free from lethal force under the circumstances. But the second – whether the deputies recklessly disregarded Rudhman's rights – was not. The Ninth Circuit expressly declined to decide whether the Officers' use of force violated Arizona law. That aspect of its decision defeats the Officers' claim of preclusion.

### 3.        The Parties Had a Full and Fair Opportunity to Litigate the Issues Underlying the Claims.

¶37        The parties had a full and fair opportunity in the federal proceeding to litigate the issues underlying the wrongful death claim and Arizona qualified immunity. In the district court and Ninth Circuit, they briefed their arguments under both federal qualified immunity and Arizona's justification statute, addressing whether the deputies violated Rudhman's rights and whether the deputies' conduct was reasonable. Both issues are central to Arizona common law qualified immunity.

### 4.        The Issues Were Necessary to the Merits.

¶38        The issue of reasonableness was integral to the Ninth Circuit's resolution of the matter but was not resolved in favor of the Officers, which is why the case was remanded to the district court and ultimately to the superior court.

**5.** **The Ninth Circuit Decision Is Preclusive on the Issue of Whether the Right Was Clearly Established, but There Is a Question of Fact as to the Reasonableness of the Deputies' Conduct.**

**¶39** Having weighed the preclusion factors, we find that issue preclusion applies in part. The federal litigation puts beyond question that the Officers did not violate clearly established law in using lethal force against Rudhman. But we recognize, as the Ninth Circuit did, that the only disputed fact between the parties is the manner in which Rudhman held the gun when he approached the deputies. We agree with the Ninth Circuit that this fact is material and creates a question as to the reasonableness of the deputies' conduct at the time they exercised deadly force against Rudhman. The court did not err in denying the Officers' summary judgment motion.

**¶40** We are not departing from *Quinn*. The issue we determine today was not raised in *Quinn* because the federal court there found the officers' conduct objectively reasonable. Here, the federal court left that issue open, allowing the Survivors to argue the Officers recklessly disregarded Rudhman's Fourth Amendment rights. Because the Ninth Circuit found a fact issue as to the reasonableness of the deputies' conduct, the Officers cannot invoke issue preclusion to determine this issue.

**¶41** Section 1983 claims and state claims vindicate different rights. *See, e.g.*, *Peterson v. Baker*, 504 F.3d 1331, 1336 (11th Cir. 2007) (internal citations omitted) ("Section 1983 must not be used as a 'font of tort law' to convert state tort claims into federal causes of action."); *Davidson v. O'Lone*, 752 F.2d 817, 827 (3d Cir. 1984) (explaining that "a tort committed by a state official acting under color of state law is not, in and of itself, sufficient to show an invasion of a person's constitutional rights under [Section] 1983"). Issue preclusion requires us to adhere to all decisions made in the Ninth Circuit's decision but it does not mandate our courts to find Arizona qualified immunity applies whenever a federal court finds that federal qualified immunity applies to a similar claim. *See Quinn*, 256 Ariz. at 84 ¶ 30 (reviewing the preclusive effect of a prior judgment de novo).

**¶42** If the Survivors can demonstrate the deputies recklessly disregarded Rudhman's rights, they can prevail, because Arizona law does not require the Survivors to prove that a clearly established right was violated, as federal law does. *Compare Chamberlain*, 151 Ariz. at 558 (framing Arizona's qualified immunity disjunctively) *with Ashcroft*, 563 U.S. at 735 (framing federal qualified immunity conjunctively).

### B. Arizona's Common Law Qualified Immunity Does Not Entitle the Officers to Summary Judgment on the Wrongful Death Claim.

¶43 The Officers also argue that Arizona qualified immunity applies as a matter of law, entitling them to summary judgment on the wrongful death claim. We disagree.

¶44 First, the Officers contend qualified immunity applies as a matter of law because there is no clearly established law demonstrating Rudhman had the right to be free from lethal force, and the reckless disregard pathway is not available for intentional uses of force. But as we have explained, a showing of a clearly established right is not required where the Survivors are arguing qualified immunity does not apply because the deputies acted in reckless disregard of Rudhman's rights. The Officers also contend the Survivors have failed to demonstrate deputies recklessly disregarded Rudhman's rights.

¶45 The Officers argue plaintiffs can never overcome qualified immunity by showing reckless disregard in cases involving intentional uses of force. But we have previously held that reckless disregard can overcome qualified immunity and support liability in cases involving intentional conduct. *See Chamberlain*, 151 Ariz. at 558 (analyzing qualified immunity in defamation case). It is true that Arizona law does not permit the Survivors to bring both negligence and intentional tort claims because conduct cannot be both negligent and intentional. *See Ryan v. Napier*, 245 Ariz. 54, 59-60 ¶¶ 16-20 (2018). But the Response brief makes clear that the Survivors' wrongful death claim is based on a theory of the intentional tort battery, not negligence. Survivors are correct in stating that "[t]he test is not whether the conduct itself was reckless but whether that conduct was done 'with reckless *disregard*' for [Rudhman's] rights." Thus, *Ryan* does not preclude application of Arizona qualified immunity to cases involving the intentional use of force.

¶46 Second, the Officers argue that even if reckless disregard could make them liable, the Survivors have failed to demonstrate the deputies' conduct rose to that heightened standard. The Survivors contend, however, that the deputies had the option to use non-lethal force when Rudhman approached them and that Rudhman had the gun at his side when he approached the deputies. Recklessness involves the "conscious disregard of the law or the rights of others." *Spooner*, 246 Ariz. at 119 ¶ 10; *see also Badia v. City of Casa Grande*, 195 Ariz. 349, 356 ¶ 27 (App. 1999) (stating the standard is "wanton misconduct that is flagrant and evinces a

lawless and destructive spirit[]") (cleaned up); *Miranda v. City of Casa Grande*, No. 2 CA-CV 2022-0030, 2022 WL 17970593, at *3-4 ¶¶ 12-15 (Ariz. App. Dec. 27, 2022) (determining if "[k]nowing disregard of a suspect's consent or knowingly giving false testimony" amounted to the "'conscious disregard of the law or the rights of others'") (quoting *Spooner*, 246 Ariz. at 119 ¶ 10). The Survivors have shown a question of fact exists as to whether the deputies' conduct amounted to "reckless disregard" of Rudhman's rights because a jury could conclude the deputies consciously disregarded the law or the rights of Rudhman in deciding to use lethal force under the circumstances. *See United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195 (App. 1990) (holding that summary judgment is improper "where the evidence or inferences would permit a jury to resolve a material issue in favor of either party[]").

¶47  Third, the Officers argue the superior court erred by declining to apply qualified immunity. The Officers contend the superior court applied the law to hold that qualified immunity only applies to immunize simple negligence. The Officers misapprehend the superior court's order. The court noted that under Spooner, qualified immunity is not available for simple negligence. But the basis for the court's ruling was that, to the extent the Survivors have alleged an intentional tort, whether qualified immunity applies turns on a disputed issue of fact - the reasonableness of the deputies conduct. Thus, the superior court did not err in applying the law.

**CONCLUSION**

¶48  We accept jurisdiction and deny relief.

